## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Pharaoh El-Forever Amen El, | Case No. 18-cv-2545 (JRT/HB) |
| Petitioner, | |
| v. | |
| Tom Roy, | **REPORT AND RECOMMENDATION** |
| Respondent. | |

HILDY BOWBEER, United States Magistrate Judge

This matter is before the Court on Petitioner Pharaoh El-Forever Amen El's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("Petition") [Doc. No. 1]. This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons stated below, the Court recommends that Amen El's Petition be denied.

## I.    BACKGROUND

Amen El, known at the time as DeSean Lamont Thomas, was changed in state court with "one count of attempted second-degree murder (drive-by shooting), one count of drive-by shooting, and one count of firearm possession by an ineligible person following an incident in August 2014." *State v. Thomas*, A16-0446, 2017 WL 1375279, at *1 (Minn. Ct. App. Apr. 17, 2017).

> Thomas made his first appearance on August 22, 2014, and his counsel indicated, "[W]e would like to schedule this for a speedy [trial]." The parties scheduled an omnibus hearing but did not set a trial date. The

district court noted Thomas's not-guilty plea and his speedy-trial demand on September 16, 2014. The parties scheduled a settlement conference for October 1, 2014, and a trial date for November 10, 2014.

*Id.* On September 12, 2014, the state gave notice to Amen El's defense counsel that DNA testing was planned on cartridges and cartridge cases found at the scene and that "[t]he planned testing of these items may preclude any further tests or experiments within the meaning of Minn. R. Crim. [P.] 9.01, subd. 1(4)." *Id.* (internal quotation marks omitted) (alteration in original).

> The parties did not reach a resolution at their October 1 settlement conference. But during the conference, the state discussed its DNA-consumption notice with defense counsel. The state clarified its intent that the BCA would be instructed to proceed with testing on October 3, 2014, and that Thomas would need to arrange for an independent expert to observe testing by that date if he intended to do so. Defense counsel responded in a letter dated October 1, 2014, [which was received on October 3, 2014,] that the defense would not have its own expert present for the testing.

*Id.*; *see also* (Exs. [Doc. No. 21-1 at 25–26, 45].[1]) On October 3, 2014, the state instructed the Bureau of Criminal Apprehension ("BCA") to conduct the DNA tests. *See Thomas*, 2017 WL 1375279, at *2. Specifically, the state mentioned that "[t]he Defense does not wish to have an expert present for the testing," and that the testing may consume the entire evidentiary sample. *Id.*

On November 7, 2014, the BCA scientist tasked with the DNA testing communicated with the prosecuting attorney directly, stating that the BCA scientist had

---

[1] Respondent provided an addendum containing two collections of exhibits spanning many hundreds of pages. *See* ([Doc. Nos. 21-1, 21-2, 30-1].) For ease of reference, the exhibits are referenced both by document number and CM/ECF pagination (rather than by the "A" number in the lower right corner of each page).

additional evidence, namely "'half of a black phone case'" and sought permission to consume the entire sample in order to maximize the DNA recovered.  *Id.*   Without consulting with Amen El's defense counsel, the prosecuting attorney "responded within minutes, giving the BCA scientist permission to consume the entire sample."  *Id.*

The parties next appeared for trial on November 10, 2014.  *Id.*; *see also* (Exs. [Doc. No. 21-1 at 3].)  No transcript was provided to the Court, but the Minnesota Court of Appeals summarized the proceeding as follows:

> The state indicated that it had not yet received the DNA results from the BCA and requested a one-week continuance. Defense counsel objected to the continuance, arguing that Thomas made a speedy-trial demand and that the testing was not labor intensive. The defense also highlighted the state's ongoing discovery obligations, and the fact that the state was on notice of the case's pace in light of the speedy-trial demand. Defense counsel also opposed the late introduction of DNA evidence, noting that she would have no opportunity to analyze the discovery or secure an expert witness to testify concerning the evidence. The district court denied the state any continuance, saying, "We are going to start a jury trial on Wednesday, and we are going to proceed with the evidence that's submitted as of this date. So if there is [newly discovered] information from the BCA, it should have been here before today."

*Thomas*, 2017 WL 1375279, at *2 (alteration in original).  The evening of November 10, 2014, the state was provided the results of the DNA evidence by fax.  (*Id.*)  The shell casings and ammunition cartridge returned inconclusive results.  (Exs. [Doc. No. 21-1 at 54].)  The only competent DNA evidence was found on the cell phone case.  (*Id.*) According to the results, the "major male predominant profile" matched Amen El, "and that that major profile would not be expected to occur more than once among unrelated individuals around the world."  (*Id.*)

On November 12, 2014, the parties appeared for trial as instructed.  *Id.*; *see also*

(Exs. [Doc. No. 21-1 at 42–97] (transcript of the hearing).)  At that time, "the state

moved the district court to reconsider its DNA-evidence ruling based on the state's

receipt of the BCA's completed DNA analysis." *Thomas*, 2017 WL 1375279, at *2; (Exs.

[Doc. No. 21-1 at 43–45].)

        Relying principally on *State v. Stroud*, 459 N.W.2d 332 (Minn. Ct. App. 1990),

the district court granted the motion and continued the case for one week in order to

allow the state time to submit its evidence.  (Exs. [Doc. No. 21-1 at 80–81].)  As part of

its reasoning, "[t]he district court noted, '[The state] had to wait three weeks for the

defense to say whether they want an expert there. In the meantime, the BCA could have

done the testing, but they had to wait three weeks.'"  *Thomas*, 2017 WL 1375279, at *2

(second alteration in original).  Ultimately, the district court "granted continuances to

*both* parties to allow the defense time to review the evidence."  *Id.* at *3 (emphasis in

original).

            The parties next appeared for a hearing on December 15, 2014.
    Defense counsel requested that the DNA evidence be suppressed, this time
    arguing that the state never requested permission to consume the DNA
    sample for the phone case. The defense argued that it played no part in any
    delay regarding testing of the phone case. The parties also noted that
    Thomas was on a hold in three other counties, but the defense argued that
    Thomas's speedy-trial demand was still being violated. The district court
    denied the suppression motion without an explanation.
            The district court indicated it was prepared to proceed with trial on
    December 15, but defense counsel indicated it would be "tantamount to
    ineffective assistance of counsel" to proceed without further analysis or
    expert consultation. Thomas then waived his right to a speedy trial (despite
    the actual deadline expiring on November 14). Thomas selected a trial date
    of August 24, 2015, [which was eventually held on October 19 thru
    November 3, 2015].

*Id.*

4

On November 3, 2015, Amen El was convicted of murder in the second-degree. *See* (Exs. [Doc. No. 21-2 at 777].) Amen El appealed his conviction to the Minnesota Court of Appeals, which affirmed the conviction. *Thomas*, 2017 WL 1375279, at *1, *8.

Before the Minnesota Court of Appeals, Amen El argued that the trial court erred when it allowed the state to introduce the DNA evidence. *See* (Exs. [Doc. No. 21-2 at 804–17].) For the most part, these arguments were supported only by citations of state statutes, rules of criminal procedure, and cases. *See* (*id.* at 795, 804–17.) For instance, Amen El argued that the admission of the DNA evidence violated Minn. R. Crim. P. 9.01, subdiv. 1, and that the district court's abuse of its discretion was evinced by its misapplication of *Stroud*. *See, e.g.*, (*id.* at 804–09, 814–15.) The only exception to Amen El's reliance on state law in his counsel's brief to the Minnesota Court of Appeals was his argument that the seven-day continuance granted by the trial court in connection with its decision to allow the state to submit the results of the cell phone DNA testing violated his right to a speedy trial guaranteed by the Sixth Amendment of the United States Constitution. (*Id.* at 815.) Amen El also filed a *pro se* brief to the Court of Appeals that largely tracks with his attorney's brief but appears to be premised entirely on state law. *See* (*id.* at 866–69.)

The Minnesota Court of Appeals decided the Minnesota state law issues on Minnesota state law grounds, and found Amen El's pro se arguments meritless. *See Thomas*, 2017 WL 1375279, at *1, 3–8. With respect to Amen El's speedy trial argument, the Minnesota Court of Appeals conducted a four-factor test articulated in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), and adopted by Minnesota. *See, e.g., State v.*

5

*Windish*, 590 N.W.2d 311, 315 (Minn. 1999).  These factors are: "(1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether the delay was prejudicial."  *Thomas*, 2017 WL 1375279, at *6.

Using this test, the court reasoned that Amen El suffered "no actual prejudice." *Id.*  Specifically, referencing *Windish* (which in turn relies on *Barker*), the Minnesota Court of Appeals was required to "consider three interests to determine whether a defendant suffers prejudice as the result of a delay: (1) preventing oppressive pretrial incarceration; (2) minimizing the anxiety and concern of the accused; and (3) preventing the possibility that the defense will be impaired."  *Id.*  In analyzing these interests, the court again relied on *Windish* when it concluded "[t]he first two concerns do not demonstrate prejudice because Thomas was under hold in other counties." *Id.* (citing *Windish*, 590 N.W.2d at 318 ("The first two concerns regarding prejudice do not apply . . . as *Windish* was already in custody for another offense.").  Furthermore, the court concluded the third factor is not met because "Thomas does not indicate how the actual delay impeded his ability to defend himself." *Id.*

After the court of appeals affirmed his conviction, Amen El petitioned the Minnesota Supreme Court for review.  *See* (Exs. [Doc. No. 21-2 at 888–94].)  In his petition for review, Amen El argued that he was forced to choose between the right to effective assistance of counsel and the right to a speedy trial.  (*Id.* at 891–92.) For instance, Amen El asserted that the court of appeals failed to consider that his choice "between two of his constitutional rights was in . . . itself prejudicial."  (*Id.* at 892.)  But

although he referred to rights to effective assistance of counsel and to a speedy trial,

Amen El did not support his petition with references to any specific *federal* constitutional

provision, statute, or case. *See generally* (*id.* at 888–94.) His petition for review was

denied.[2] *See* (Exs. [Doc. No. 21-2 at 888–94, 907].)

Next, Amen El brought a first petition for postconviction relief in state court on

July 14, 2017. (*Id.* at 777.) The basis for this petition was that Amen El: "a. Claimed

new evidence regarding the DNA testing done by the BCA; b. Claimed the Court of

Appeals allows a new trial in these circumstances; [and] c. A claimed violation of

Petitioner's Equal Protection rights based upon an inability to conduct DNA tests." (*Id.*

at 778.) This petition was denied under an application of *State v. Knaffla*, 243 N.W.2d

737, 741 (Minn. 1976). *See* (Exs. [Doc. No. 21-2 at 778].)

On September 1, 2017, Amen El brought a second petition for postconviction

relief. *See* (*id.* at 781.) The court found that Amen El's "second petition for post-

conviction relief provide[d] no additional information or new basis for relief" in light of

his first petition. (*Id.* at 782.) Consequently, Amen El's second petition was also denied

on the basis of *Knaffla*. *See* (*id.* at 782–83.)

On June 19, 2018, Amen El brought a third petition for postconviction relief. *See*

(*id.* at 784.) In this petition, Amen El once again argued that he was required to choose

---

[2] Because the Minnesota Supreme Court denied review, the court of appeals decision is
the final decision for the purposes of this Report and Recommendation. *See* (Exs. [Doc.
No. 30-1 at 907].); *see also Gonzalez v. Thaler*, 565 U.S. 134, 154 (2012) ("We can
review, however, only judgments of a state court of last resort or of a lower state court if
the state court of last resort has denied discretionary review." (internal quotation marks
omitted)).

between two constitutional protections: "the right to a speedy trial and the right to effective assistance of counsel." (*Id.* at 785.) In ruling on the third petition for post-conviction relief, the court acknowledged that Amen El premised at least part of his petition on "two cases he asserts provide new interpretations of constitutional law: *McCoy v. Louisiana*, 138 S. Ct. 1500 (2018) and *United States v. Carlson*, 2018 WL 1660733 (D. Minn. April 5, 2018)." (*Id.* at 785–76.) Concluding that "[t]he cases cited by Petition are factually and legally distinguishable, do not provide a new interpretation of law applicable to the facts of Petitioner's case and do not aid his claim in this third petition," the court denied Amen El's petition under *Knaffla*. *See* (*id.* at 786–92.)

Specifically, the court explained that *McCoy* dealt with a "structural error arising from a violation of defendant's Sixth Amendment rights to autonomy and effective assistance of counsel where defense counsel conceded defendant's guilt during the guilt phase of a capital trial despite defendant's adamant objection to any admission of guilt." (*Id.* at 789 n.3.) The state court distinguished the facts in Amen El's case from those in *McCoy* on the ground that Amen El "does not claim ineffective assistance of counsel. Rather, Petitioner's structural-error claim is based on an alleged forced-forfeiture of his speedy-trial rights; a claim not addressed in *McCoy*." (*Id.*) Furthermore, the Court concluded that *McCoy* was inapposite because "there was no violation of Petitioner's autonomy as he made the choice to waive the . . . speedy [trial] deadline." (*Id.*)

The state court further explained that *Carlson* was not relevant because it dealt with an ineffective assistance of counsel claim premised on a conflict of interest. (*Id.*) "The only similarity between the *Carlson* case and Petitioner's case is Petitioner also

failed to cite, and this Court cannot find, any authority supporting Petitioner's claims."

(*Id.*)

Amen El brought the instant Petition Under 28 U.S.C. § 2254 for Writ of Habeas

Corpus by a Person in State Custody ("Petition") [Doc. No. 1] on August 29, 2018.  Less

than a week later, on September 2, 2018, he brought yet another petition for

postconviction relief in state court.  *See* (Exs. [Doc. No. 30-1 at 2–6].[3]).  In that (fourth)

petition for postconviction relief, Amen El asserted a right to relief under *Simmons v.*

*United States*, 390 U.S. 377 (1968).  *See, e.g.*, (*id.* at 2–5.[4])  He thereupon moved this

Court for a Stay in Abeyance of his habeas petition to allow him to exhaust his *Simmons*

arguments before the state court.  [Doc. No. 2.]  In a previous Report and

Recommendation, the Court—without deciding the merits of Amen El's underlying

habeas petition—recommended that the motion to stay be denied on the ground that his

reliance on *Simmons* was procedurally defaulted under *Knaffla* and therefore a stay to

---

[3] According to Amen El's criminal docket in state court, this was framed as a "Petition for Review of Decision of [the] Court of Appeals."  *See* Docket, *State v. Thomas*, 19-HA-CR-14-2948, *available at* http://www.mncourts.gov/access-case-records.aspx (access criminal records by case number and enter "19-HA-CR-14-2948" into the appropriate field) (last visited August 6, 2019).[4] While the Court has access to the Docket in *State v. Thomas*, 19-HA-CR-14-2948, it does not have access to all of the files on that docket.  For instance, the Court cannot access the decision of the court related to this "petition" for postconviction relief, but notes that it was decided on April 16, 2019, and that there has been no change to Amen El's conviction in his case.  *See* Docket, *State v. Thomas*, 19-HA-CR-14-2948.

[4] While the Court has access to the Docket in *State v. Thomas*, 19-HA-CR-14-2948, it does not have access to all of the files on that docket.  For instance, the Court cannot access the decision of the court related to this "petition" for postconviction relief, but notes that it was decided on April 16, 2019, and that there has been no change to Amen El's conviction in his case.  *See* Docket, *State v. Thomas*, 19-HA-CR-14-2948.

allow him to raise and exhaust *Simmons* before the Minnesota courts would not be appropriate. *See generally* (Jan. 16, 2019, R&R [Doc. No. 32].) That Report and Recommendation was adopted in full by the Honorable John R. Tunheim, United States Chief District Judge. *See* (Mar. 11, 2019, Order [Doc. No. 36].)

## II.    DISCUSSION

Amen El's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("Petition") [Doc. No. 1] raises multiple grounds for relief: 1) Amen El was "forced to choose between two constitutional rights [i.e., his right to effective assistance of counsel and his right to a speedy trial] due to state[']s discovery violation and court not suppressing evidence"; 2) Amen El's conviction violated his rights to a speedy trial; 3) Due Process violations; 4) violations under the First Amendment and Amen El's "freedom to contract" rights. *See* (Pet. at 5–10.)

### A.    Legal Standard

An application for writ of habeas corpus is only available to those in custody who have exhausted their available state remedies. *See* 28 U.S.C. § 2254(b)–(c). Exhaustion is a federal requirement that "is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). As a result, "state prisoners must give the state courts one full opportunity to resolve any [federal] constitutional issues by invoking one complete round of the State's established appellate review process." *Id.* Stated differently:

[b]efore seeking a federal writ of habeas corpus, a state prisoner must

exhaust available state remedies, thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. To provide the State with the necessary opportunity, the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim.

*Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citations and internal quotation marks omitted).  Fair presentation of a claim occurs when "the state court rules on the merits of his claims, or if [the petitioner] presents his claims in a manner that entitles him to a ruling on the merits."  *Gentry v. Lansdown*, 175 F.3d 1082, 1083 (8th Cir. 1999) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)).  That is, "[i]n order to fairly present a federal claim to the state courts, the petitioner must have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts." *McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997) (emphasis added) (internal quotation marks omitted).

In situations where a claim is unexhausted but no state court remedy exists because, for example, procedural rules would prevent further attempts at exhaustion, the claim is considered procedurally defaulted.  *See, e.g.*, *Murphy v. King*, 652 F.3d 845, 848–50 (8th Cir. 2011) (holding that petitioner procedurally defaulted on his Eighth Amendment claims because they were not properly raised in state court and were therefore barred under *Knaffla*). Whether a federal habeas claim is procedurally defaulted is a question of state law.  *See Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005) (stating that "if no state court remedy is available for the unexhausted claim" federal

courts cannot conduct "review of the defaulted claim" (internal quotation marks

omitted)).  As a result, when a claim is procedurally defaulted, federal courts are

prevented from adjudicating the claim on the merits unless a petitioner can demonstrate

both good cause for the failure and prejudice resulting therefrom, or "that failure to

consider the claims will result in a fundamental miscarriage of justice." *Coleman v.*

*Thompson*, 501 U.S. 722, 750 (1991) (internal quotation marks omitted).

**B.    Analysis**

In support of his Petition, Amen El asserts the "gravamen of this claim is based on

the discovery violation" under state law.  *See* (Mem. in Supp. [Doc. No. at 1].)  But "it is

not the province of a federal habeas court to reexamine state-court determinations on

state-law questions. In conducting habeas review, a federal court is limited to deciding

whether a conviction violated the Constitution, laws, or treaties of the United States."

*Estelle v. McGuire*, 502 U.S. 52, 67–68 (1991).  Consequently, the Court analyzes Amen

El's claims only to the extent they raise federal issues.

**1.    Whether Amen El's Claims Are Procedurally Defaulted**

The only federal question raised by this Petition that Amen El fairly presented to

the Minnesota Court of Appeals is ground two: whether his speedy trial rights were

violated.  Grounds three and four, alleging due process violations and First Amendment

violations, were never presented to the Minnesota Court of Appeals and are therefore

unexhausted grounds for relief.  *Compare* (Exs. [Doc. No. 30-1 at 804–17], *and id.* at

888–94, *with* Pet.)

Ground one, to the extent it encompasses additional arguments unrelated to Amen El's speedy trial arguments (which will be addressed in connection with ground two), is also unexhausted because he did not fairly present a *federal* issue to the state courts; other than his reference to the Sixth Amendment right to a speedy trial, his arguments to the Minnesota Court of Appeals on initial appeal of his state court conviction relating to ground one did not refer either to a specific federal constitutional provision or to a case decided on issues of federal law. *See* (Exs. [Doc. No. 30-1 at 804–17; 888–94].)  While Amen El referred to his right to "effective assistance of counsel," *see, e.g.*, (Exs. [Doc. No. 30-1 at 816]), in his arguments before the state courts, this is insufficient, without more, to alert the state courts of the federal nature of Amen El's challenge. *Cf. Reese*, 541 U.S. at 33 (holding the phrase "ineffective assistance of appellate counsel" was incapable—by itself—of alerting the state courts of the federal nature of the claim because the phrase applies with equal force to state law issues).  Consequently, except to the extent it overlaps with (and will be addressed in the context of) the ground two claim of a violation of his right to a speedy trial, any purported federal-law based claim for habeas relief sought to be asserted in ground one is also unexhausted.

In situations where a claim for relief is unexhausted but no state court remedy exists (because, e.g., procedural rules would prevent further attempts at exhaustion), the claim is also considered procedurally defaulted. *See, e.g., Murphy v. King*, 652 F.3d 845, 848–50 (8th Cir. 2011).  Here, therefore, even if Amen El were to attempt to exhaust any federal issue underlying his first ground for relief, it is clear based on the outcome of his prior attempts to obtain post-conviction relief that he would be barred under *Knaffla*.

13

*See, e.g., Krikorian v. Beltze*, 09-cv-59 (RHK/JJK), 2009 WL 2591645, at *4 (D. Minn. Aug. 19, 2009) (Kyle, J.). Indeed, the procedural history of this case would also support the same conclusion as in *Krikorian*, because Amen El re-raised ground one in his third petition for post-conviction relief. *See* (Exs. [Doc. No. 30-1 at 785].) This petition for post-conviction relief was denied under *Knaffla*. *See* (*id.* at 786–92.)) For instance, as described in more detail in the Court's January 16, 2019, Report and Recommendation, any claims premised on *Simmons* are procedurally defaulted, and to the extent Amen El relies on *Simmons* to support his ground one claims, ground is also procedurally defaulted under *Knaffla*. *See* (Jan. 16, 2019, R&R at 5–7, *adopted by* Mar. 11, 2019, Order.)

Furthermore, for all his procedurally defaulted grounds—one, three and four— there are no exceptions available to Amen El under *Knaffla*. "The primary exceptions . . . are where a novel legal issue is presented, or the interest of fairness require relief." *Murphy*, 652 F.3d at 849 (citing *Washington v. State*, 675 N.W.2d 628, 630 (Minn. 2004)). Here, Amen El's arguments are not novel, nor do they suggest that interests of justice require review. To the extent Amen El relies on *McCoy* or *Carlson* as "new" cases that would excuse his procedural default, the Court agrees with the state court's conclusions that neither *McCoy*[5] nor *Carlson*[6] are relevant to the determination before the

---

[5] *See* 138 S. Ct. at 1505 ("With individual liberty—and, in capital cases, life—at stake, it is the defendant's prerogative, not counsel's, to decide on the objective of his defense: to admit guilt in the hope of gaining mercy at the sentencing stage, or to maintain his innocence, leaving it to the State to prove his guilt beyond a reasonable doubt.")

[6] *See* 2018 WL 1660733, at *2 (holding that the defendant's arguments failed because he could did not cite to nor could the court find any case that supported defendant's argument that "an attorney's conflict of interest amounted to structural error" and absent such a showing, the defendant was unable to demonstrate that the alleged conflict of

Court and are not new or novel in the context of Amen El's attempts to obtain relief. *See* (Exs. [Doc. No. 21-2 at 789 n.3].)  As a result, *Knaffla* acts to bar Amen El's attempts at asserting any of his unexhausted grounds in state court. *See Murphy*, 652 F.3d at 848–50; *see also Brown v. State*, 746 N.W.2d 640, 642 (Minn. 2008) ("*Knaffla* similarly bars postconviction review of claims that could have been raised in a previous postconviction petition."); *Knaffla*, 243 N.W.2d at 741; *see also* (Jan. 16, 2019, R&R at 5–7 (reaching the same conclusion with respect to Amen El's "new" ground for relief in reliance on *Simmons v. United States*, 390 U.S. 377 (1968); Mar. 11, 2019, Order at 6–7 (overruling Amen El's objection as to this conclusion).)

In other words, there is no question that Minnesota courts would apply *Knaffla* to bar Amen El from asserting grounds one, three, or four—or any other ground in the future—in state court.  As a result, the Court concludes that grounds one, three, and four are procedurally defaulted.

When a claim is procedurally defaulted, federal courts are prevented from adjudicating the claim on the merits unless a petitioner can demonstrate cause and prejudice, "or demonstrate[s] that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (internal quotation marks omitted).  Amen El has provided no reasons that would excuse the procedural default.

---

interest actually affected the representation).

Thus, the only ground for habeas relief that remains exhausted and properly before the Court is Amen El's assertion that the delays in bringing his case to trial—either in the form of the week-long continuance that was granted or the total time between his initial appearance and trial—violated the speedy trial rights secured to him under the Sixth Amendment.

### 2.    Whether Amen El's Right to a Speedy Trial Was Violated

When a ground for habeas relief is properly before a federal court, habeas corpus relief remains unavailable unless the state court proceeding "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1). The Supreme Court has held that these two clauses operate separately.  *See Bell v. Cone*, 535 U.S. 685, 694 (2002).  Specifically,

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable . . . .

*Id.* (citations omitted).

There is nothing to suggest that the decision of the Minnesota Court of Appeals is contrary to established federal law.  The court of appeals cited the proper tests established by the United States Supreme Court in these circumstances.  *See Thomas*, 2017 WL 1375279, at *6.  Thus, Amen El's Petition turns on the question of whether the Minnesota

16

Court of Appeals's determination involved an unreasonable application of clearly established federal law.  The Court concludes that it did not.

In its analysis, the court of appeals presumed for the sake of argument that the length of the continuance was presumptively prejudicial, and thus it went directly to a consideration of whether Amen El was prejudiced as a result of the continuance.  *See Thomas*, 2017 WL 1375279, at *6.  But in federal court, "[s]imply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay."  *Doggett v. United States*, 505 U.S. 647, 652–53 (1992).

The Court notes that ground two only alleges a speedy trial violation with regard to the week-long continuance granted by the trial court to allow the state to submit the report of the DNA evidence collected from the cell phone.  In the circumstances of the instant case, federal speedy trial jurisprudence does not support the proposition that the week-long continuance crosses the line between "ordinary" and "presumptively prejudicial" delay.[7]  Indeed, the Eighth Circuit in applying the *Barker* standard has concluded that a delay of five months interrupted by pretrial motions "was not

---

[7] In its briefing, Respondent discusses whether the violation of the "60-day rule" is presumptively prejudicial.  *See* (Mem. in Opp'n at 15 (citing *State v. Friberg*, 435 N.W.2d 509, 513 (Minn.1989).)  But the 60-day rule is one of *Minnesota* law, not *federal* law.  *See* Minn. R. Crim. P. 11.09(b) ("A defendant must be tried as soon as possible after entry of a plea other than guilty. On demand of any party after entry of such plea, the trial must start within 60 days unless the court finds good cause for a later trial date."); *see also Friberg*, 435 N.W.2d at 513.  As such, that rule is irrelevant to whether the Minnesota Court of Appeals decision was contrary to or an unreasonable application of *federal* law.

sufficiently long to be presumptively prejudicial." *United States v. Patterson*, 140 F.3d

767, 772 (8th Cir. 1998); *see also United States v. McFarland*, 116 F.3d 316, 318 (8th

Cir.1997) (delay of just over seven months was not presumptively prejudicial). It has

held that "[a] delay approaching a year *may* meet the threshold for presumptively

prejudicial delay requiring application of the *Barker* factors." *United States v. Titlbach*,

339 F.3d 692, 699 (8th Cir. 2003) (emphasis added)). By contrast, the Eighth Circuit has

held a thirty-seven month delay to be presumptively prejudicial. *United States v. Walker*,

92 F.3d 714, 717 (8th Cir. 1996).

Thus, it is virtually inconceivable that the one-week delay complained of in Amen

El's ground two would be considered presumptively prejudicial. But, even if the Court

considered the entirety of the interval between Amen El's original scheduled trial date

and the date his trial began (during which most of the delay was requested by Amen El's

own counsel and, to a large extent, followed Amen El's waiver of his speedy trial

rights[8]), the facts here are much more akin to *Patterson* and *MacFarland* than *Walker* or

even *Titlbach*. As a result, it would be reasonable to conclude the length of delay in this

case was not presumptively prejudicial and therefore did not require analysis of the

*Barker* factors to address Amen El's claim of a violation of his right to a speedy trial

under the U.S. Constitution, and the Court could recommend denying Amen El's petition

on ground two for this reason alone. *See Doggett*, 505 U.S. at 651–52; *Titlbach*, 339 F.3d

at 699.

---

[8] *See Thomas*, 2017 WL 1375279, at *3.

18

Nevertheless, even if the Court assumes, as the Minnesota Court of Appeals did, that the delay was presumptively prejudicial, Amen El's habeas petition still fails. That is, Amen El cannot establish that the Minnesota Court of Appeals unreasonably applied federal law in determining that he suffered no prejudice. The Minnesota Court of Appeals concluded that because Amen El was on custody holds in three other counties, he could not make the requisite showing under *Barker*. *See Thomas*, 2017 WL 1375279, at *6 ("The first two concerns [under *Barker*] do not demonstrate prejudice because Thomas was under hold in other counties."). Contrary to Amen El's position, the Minnesota Court of Appeal's decision is entirely consistent with—and indeed very similar to—decisions rendered by the Eighth Circuit on this issue.

For instance, in *United States v. Aldaco* 477 F.3d 1008 (8th Cir. 2007), the defendant was detained on a first set of charges while being tried on a second set of charges in the case at issue before the Eighth Circuit. In addition to other issues related to his conviction, the defendant sought a dismissal of his indictment premised on violation of his speedy trial rights. The Eighth Circuit determined that notwithstanding the presumptively prejudicial three-and-a-half-year incarceration while he awaited trial, the defendant could not show prejudice under the *Barker* test. *Aldaco* 477 F.3d at 1019. The court reasoned

> "Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect . . . . (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532, 92 S. Ct. 2182. He was arrested on state homicide charges on December 7, 2001, and detained from that point forward. He was convicted of murder in the first degree, use of a deadly

weapon to commit a felony, possession of a deadly weapon by a felon and possession of a controlled substance and sentenced on April 12, 2005, to life imprisonment. Thus, no matter what delay occurred on his federal charges, there was no oppressive pretrial incarceration based on these charges prior to his May 24, 2005, federal trial start date.

*Id.* at 1019 (omission in original). Furthermore, the court in *Aldaco* noted the defendant "has not made any showing of how his defense was impaired by the lengthy delay. As a result, we find no showing of prejudice. Therefore, we conclude his Sixth Amendment rights were not violated by the length of his proceedings." *Id.* at 1019–20.

In the instant case, while the Minnesota Court of Appeals opinion does not elaborate specifically on the dates of Amen El's custody holds, public records identify a separate case in which Amen El was indicted in October 2014 on ten counts of first- and second-degree murder. *State v. Thomas*, No. A15-1542, 2017 WL 1375278, at *3 (Minn. Ct. App. Apr. 17, 2017). He was incarcerated awaiting trial, where he was convicted in May 2015 of four counts of aiding and abetting second-degree murder and sentenced to 451 months in prison. *Id.* at *3; *see also* Petition, *Amen El v. Roy*, 17-cv-2790 [Doc. No. 1 at 1]. Thus, Amen El would have been incarcerated because of custody holds regardless of any delay in the start of his trial in the instant case. As a result, the Court is satisfied that the Minnesota Court of Appeals conclusion that the first two *Barker* concerns are not present is a reasonable application of controlling federal caselaw in light of the reasoning in *Aldaco* and similar cases. *See Thomas*, 2017 WL 1375279, at *6; *cf. Aldaco* 477 F.3d at 1019–20.

That said, the third concern, impairment of the accused's defense, is considered the most serious form of prejudice. *See, e.g.*, *Doggett*, 505 U.S. at 654; *Barker*, 407 U.S. at 532. The Supreme Court has recognized that this element is in many respects the hardest for a petitioner to demonstrate. *See Doggett*, 505 U.S. at 655 ("*Barker* explicitly recognized that impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony can rarely be shown." (internal quotation marks)). Instead, in the absence of specific evidence of prejudice, the Supreme Court has generally looked to the diligence of the prosecution as the touchstone of the inquiry. "Thus, in this case, if the Government had pursued [the petitioner] with reasonable diligence from his indictment to his [conviction], his speedy trial claim would fail." *Id.* at 656 "Indeed, that conclusion would generally follow as a matter of course however great the delay, so long as [the petitioner] could not show specific prejudice to his defense." *Id.*

Here, there is nothing in the record to suggest that the state did not diligently pursue the prosecution of Amen El. For instance, there is no suggestion that the state purposefully or even negligently did anything to impede the scheduling of Amen El's trial. *Cf. Id.* at 656–57. Amen El made a first appearance on August 22, 2014, he waived his speedy trial rights on December 15, 2014, his trial began on October 13, 2015, and he was convicted on November 3, 2015, inclusive of a nine-month continuance granted at the request of Amen El's counsel. *See, e.g.*, *Thomas*, 2017 WL 1375279, at *1–3.

Furthermore, Amen El has not shown specific prejudice to his defense. In his memorandum in support, Amen El argues he was prejudiced in his defense because his

lead counsel was pregnant and "unable to perform." (Mem. in Supp. at 7.) Amen El also

asserts that he "was forced to go to trial with co-counsel who was essentially less

developed in the case in presentation."[9] (*Id.*) But Amen El's argument is too

speculative. The "possibility of prejudice is not sufficient to support [a petitioner's]

position that their speedy trial rights were violated." *United States v. Loud Hawk*, 474

U.S. 302, 315 (1986).

For these reasons, ground two should be denied, and the Petition should be

dismissed.

## III.    CERTIFICATE OF APPEALABILITY

A § 2254 habeas corpus petitioner cannot appeal a denial of his petition unless he

is granted a Certificate of Appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App.

P. 22(b)(1). A COA cannot be granted unless the petitioner "has made a substantial

showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

> When the district court denies a habeas petition on procedural grounds
> without reaching the prisoner's underlying constitutional claim, a COA

---

[9] Amen El also argues that his defense was prejudiced by his inability to conduct his own DNA testing of the cell phone case. *See* (Mem. in Supp. at 8.) As it pertains to whether his speedy trial right was violated, this argument fails for two reasons. First, the cell phone case was consumed before the continuance was granted, *Thomas*, 2017 WL 1375279 at *2, and therefore Amen El's inability to "test" the cell phone case was not caused by any delay in the trial. Second, the trial court's decision to admit the cell phone DNA evidence was made on the basis of state law and cannot be characterized as having been caused by any delay in the trial. *See id.* at *4. On the contrary, Amen El's counsel sought a continuance for the sole purpose of preparing a defense in light of the admitted evidence. *Id.* at *3. At its heart, Amen El's argument seems to be that because the trial judge impermissibly admitted the DNA evidence, Amen El (through his counsel) was forced to seek an extended continuance, thus denying him the speedy trial he desired. But the premise for that argument is founded on an alleged error under state law, and is not reviewable on a habeas petition. *Cf. Estelle*, 502 U.S. at 67–68.

should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, the Court finds it unlikely that any other court, including the Eighth Circuit Court of Appeals, would decide Amen El's grounds for federal habeas relief any differently than they have been decided here. Amen El has not identified (and the Court cannot independently discern) anything novel, noteworthy, or worrisome about this case that warrants appellate review. Therefore, the Court recommends that Amen El not be granted a COA in this matter.

## IV.    RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that**:**

1. Petitioner Pharaoh El-Forever Amen El's Petition [Doc. No. 1] be **DENIED**;

2. This action be **DISMISSED**; and

3. No certificate of appealability should issue.

Dated: August 7, 2019

s/Hildy Bowbeer
HILDY BOWBEER
United States Magistrate Judge

**Notice**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).